GREENE COUNTY, Missouri,
Plaintiff–Respondent,

v.

Adam F. PENNEL, a Minor, and Cara Pennel and Josh Pennel, a Minor, and Chad Pennel, a Minor, Roger L. Pennel, and Gideon Criger, Defendants–Appellants.

Nos. 22484 and 22600.

Missouri Court of Appeals,
Southern District,
Division Two.

April 15, 1999.

Motion for Rehearing and Transfer
Denied May 10, 1999.

Application to Transfer Denied
June 29, 1999.

Andrew J. Gelbach, Warrensburg, for Appellants Adam, Josh, Cara & Chad Pennel.

John E. Turner, Turner & Sweeny, Kansas City, for Appellant Roger Pennel.

John Mullen, Franke & Schultz, Kansas City, for Appellant Gideon Criger.

Theodore L. Johnson, III, John W. Housley, David A. Fielder, Lowther, Johnson, Joyner, Lowther, Cully & Housley, LLC, Springfield, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

Greene County, Missouri, ("Greene County") filed this declaratory judgment action seeking an adjudication that damages it owes third parties for an employee's negligence in a motor vehicle accident are limited by Missouri's sovereign immunity statutes, §§ 537.600 and 537.610,[1] and

1. All references to statutes in this opinion are to RSMo 1994 unless otherwise indicated.

that the county commission cannot expand the county's liability therefor beyond the statutory limits. Upon motion, the trial court entered summary judgment for Greene County. This appeal followed. We affirm.

On June 2, 1994, Appellant Gideon Criger ("Criger") was driving a truck for Greene County when the truck collided with a car driven by Appellant Roger Pennel ("Roger"). Roger's wife, Sharon, was killed in the collision, and Roger and his two minor sons, Josh and Adam, were injured.

As a result of the accident, Appellant Adam Pennel, by next friend, filed a lawsuit for personal injuries against both Criger and Roger. Roger, in turn, filed a cross-claim against Criger for his personal injuries and the wrongful death of Sharon. Other members of the Pennel family later intervened in the suit, filing actions for personal injuries and the wrongful death of Sharon. Greene County was not named as a defendant in any of these actions. Ultimately, these cases resulted in judgments against Criger for $148,115.28 for Roger's injuries and $164,683.00 for Josh's injuries. Both cases were court-tried, and, in each, the court assessed 100% fault to Criger and found that Criger was acting in the course of his employment with Greene County at the time of the accident.

After the entry of judgment in these cases, Greene County offered to settle all of the Pennel family's claims—the derivative wrongful death claim for Sharon's death and the three personal injury claims for Roger, Josh, and Adam—for $400,000 ($100,000 per claim). The Pennels had earlier rejected the same offer before their claims against Criger were tried. Greene County's position was that $400,000 was the maximum it could pay to settle these claims under § 537.610. When the Pennel family again rejected the settlement offer, Greene County brought this declaratory judgment action against Criger and the Pennel family.[2]

Appellants argue that Greene County is liable for the amount of any judgment entered against Criger despite the limits imposed by § 537.610. They base their argument on two documents.

The first is a letter dated January 20, 1992, written and sent by the Greene County Counselor to county employees. In pertinent part, it reads:

"Greene County ... believes it should not provide liability insurance coverage to its ... employees. The primary basis for this decision has been the sovereign immunity which the County enjoys pursuant to § 537.600, R.S.Mo.

"Accordingly, it is the position of Greene County, Missouri that it will defend any claims constituting exceptions to sovereign immunity. Further, Greene County will satisfy any successfully prosecuted claim provided employee was in the course and scope of their employment with Greene County, Missouri."

The second document is entitled "Greene County Commission Accident Policy" and is signed by the Greene County commissioners. In relevant part, it provides:

"Effective January 1, 1992, the Greene County Commission approved a policy that Greene County will defend any claims constituting exceptions to Sovereign Immunity, State Statute 537.600, [RSMo] against the County and its employees. If found liable, Greene County will pay for damages from negligent acts or omissions, in the following instances:

"1. Injuries directly resulting from the negligent acts or omissions by Greene County employees arising out of the operation of vehicles or motorized vehicles within the course of their employment.

. . . .

**2.** When referring to Criger and the Pennels collectively, we call them "Appellants."

"The maximum amounts of liability for a government entity are referenced in State Statute 537.610, [RSMo]. The limits of liability coverage for the County shall not exceed:

"1. $1,000,000 for all claims arising out of a single occurrence.

"2. $100,000 for any one person in a single accident or occurrence."

In its declaratory judgment petition, Greene County asked the court to find, *inter alia*, that neither the letter to its employees dated January 20, 1992, nor the "Greene County Accident Policy" signed by its commissioners obligated Greene County to pay or satisfy any claim or judgment against Criger arising out of the June 2, 1994, accident in excess of $100,000 per claimant. It also sought a declaration that any interpretation of statutes or documents that would "otherwise obligate or require Greene County to pay or satisfy any claim or judgment ... in excess of $100,000 per person per accident ... is unenforceable, erroneous and contrary to law."

A few months after filing the declaratory judgment action, Greene County agreed to "pay $100,000.00 to Adam Pennel; $100,000.00 to Josh Pennel; $100,000.00 to Roger Pennel less car rental payment of $743.94; and $100,000.00 to the wrongful death claimants ... on behalf of ... [Sharon] Pennel" as partial or whole satisfaction of its obligations to the Pennels pending the outcome of the declaratory judgment action. Greene County then paid $399,-256.06 into the "Registry of the Court for payment out of the declaratory judgment action which is pending."

Thereafter, Greene County filed its motion for summary judgment. The trial court sustained Greene County's summary judgment motion. In so doing, the court concluded that "[n]either the Greene County ... Counselor's letter of January 20, 1992, the Greene County Accident Policy adopted in June 1992, nor § 49.275, waive, abrogate, or avoid the Sovereign Immunity damage limits found in § 537.610." It also declared that, by paying the Pennel family $400,000, Greene County had fulfilled its duties and obligations arising out of the June 2, 1994, accident to both the Pennels and Criger. Criger and the Pennels appealed.

## STANDARD OF REVIEW

Appellate review of an entry of summary judgment is essentially *de novo* because "[t]he propriety of summary judgment is purely an issue of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[6] (Mo.banc 1993). We view the record in the light most favorable to the party against whom summary judgment was entered. *Id.* at 376[1].

## DISCUSSION AND DECISION

■ Initially, we note that in three of Appellants' four points relied on (Points I, II, and IV), they claim the trial court erred in finding that Greene County had *no* indemnity obligation to Appellant Criger. This claim misstates the trial court's findings. The court *did not* find that Greene County had no obligation to indemnify Criger. Instead, the Court found that after paying the Pennels $400,000, Greene County had "no *further* duty or obligation to ... Criger to pay or satisfy any judgments that have or may be entered against him in favor of the Pennels as a result of the June 2, 1994 motor vehicle collision." (Emphasis added.) By mischaracterizing the trial court's finding, Appellants are essentially asking us to convict the trial court of an error that it did not commit. This we will not do. *See Estate of Abbott*, 944 S.W.2d 279, 284 (Mo.App.1997); *Air Evac EMS, Inc. v. Goodman*, 883 S.W.2d 71, 74 (Mo.App.1994). Thus, we will consider only whether the trial court erred when it found that Greene County had "no *further* duty or obligation" to Criger. (Emphasis added.)

■ Appellants' first point relied on charges that summary judgment was

wrong "because [Greene County] has an accident policy which provides for unlimited indemnity to its employees if the employee was acting in the scope and course of employment, and ... Criger has been found liable for damages while acting in the course and scope of his employment."

In their argument, Appellants point out that courts recognize that a county may well "want to protect its functionaries against individual liability." *See Moses v. County of Jefferson*, 910 S.W.2d 735, 737 (Mo.App.1995). Appellants state, "[P]resumably, [Greene County] did want to protect its employees from personal liability, and therefore instituted its 'Accident Policy.'" They observe that "the existence and adoption of that policy [was] recited by [Greene County] as 'an uncontroverted fact [in its summary judgment motion]." Appellants argue that the accident policy adopted by the county "does not limit the amount of damages it will pay on behalf of its employees" and "by its terms provides for unlimited liability coverage to [the County's] employees." Finally, they contend that § 49.275 empowered Greene County to assume unlimited liability for the negligent acts of its employees. Based on these arguments, Appellants insist that the trial court erred when it ruled that Greene County's exposure in this case is limited to the statutory cap of $400,000.

■■■ Missouri counties ordinarily enjoy sovereign immunity from claims for the negligent acts and omissions of their employees. *Moses*, 910 S.W.2d at 736[1]. The legislature codified this immunity in § 537.600, which reinstated sovereign immunity as it existed before September 12, 1977. However, the statute expressly waives sovereign immunity for injuries arising out of public employees' negligent operation of motor vehicles and injuries caused by the dangerous condition of property. § 537.600.1; *Moses*, 910 S.W.2d at 736[1]. Even so, a public entity's liability for claims arising from negligent operation of motor vehicles and dangerous property conditions is not unlimited. *See Richard-*

*son v. State Hwy. & Transp. Comm'n*, 863 S.W.2d 876, 880 (Mo.banc 1993). Section 537.610.2 provides that the liability of a Missouri public entity for claims within the scope of § 537.600 "shall not exceed one million dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident."

■■■ A county must have legal authority to act. *Atwell v. Jack Henry and Assoc., Inc.*, 748 S.W.2d 929, 933[2] (Mo.App.1988). A county commission is given authority to "manage all county business as prescribed by law," Mo. CONST. art. VI, § 7 (1945), and, aside from the fiscal affairs of the county, it has only such powers as the legislature sees fit to delegate. *County of St. Francois v. Brookshire*, 302 S.W.2d 1, 3[3] (Mo.1957); *Atwell*, 748 S.W.2d at 933[2]. A county commission is not a general agent of the county or the state. *American Aberdeen Angus v. Stanton*, 762 S.W.2d 501, 502[1] (Mo.App.1988). Its powers are granted, limited and defined by law. *Id.* On the other hand, our supreme court has said that a county can exercise powers that are "fairly implied" by powers expressly granted. *Lancaster v. County of Atchison*, 352 Mo. 1039, 180 S.W.2d 706, 708[2] (banc 1944).

With the foregoing principles in mind, we examine § 49.275, which Appellants contend authorized the County to adopt a policy of unlimited indemnification of its employee, Criger. In pertinent part, § 49.275 provides:

"1. The county commissions ... may, in their discretion and in addition to any other allowance provided by law, provide such transportation for any ... employee as is reasonably necessary to the efficient performance of his official duties.

"2. Such transportation may be provided by furnishing county-owned automobiles or by paying a reasonable cash allowance for the use of privately owned automobiles, or by paying a fixed

amount per mile for miles actually traveled in privately owned automobiles, or by furnishing gasoline and oil, or *in such other manner, or combination of manners, as the county commission may direct.*" (Emphasis added.)

Appellants argue that because this statute expressly empowers the County to provide transportation for its employees and, in so doing, to provide cash allowances therefor, it follows that "the right and power ... to provide for indemnification can be 'fairly implied' in the wording of the statute." To bolster their argument, Appellants cite *Winterton v. Van Zandt*, 351 S.W.2d 696, 700–701 (Mo.1961), which they argue stands for the proposition that Missouri has a public policy of assuring that persons injured in motor vehicle accidents as a result of others' negligence are *"fairly compensated"* therefor. Relying on this alleged policy, Appellants contend "it would be reasonable and appropriate for [Greene County], under the authority of § 49.275 R.S.Mo., to ... provide for indemnification of employees in the event of a successfully prosecuted claim." This argument is fatally flawed for two reasons.

First, Appellants' reliance on *Winterton* is misplaced. The *Winterton* case is not controlling here because sovereign immunity was not an issue in that case. Moreover, Appellants mischaracterize the *Winterton* holding. The *Winterton* court wrote: "[Missouri's Motor Vehicle Safety Responsibility Law is] indicative of the public policy of this state to assure financial remuneration to the extent and under the conditions therein provided for damages sustained through the negligent operation of motor vehicles upon the public highways of this state...." 351 S.W.2d at 700–701[1]. *Winterton* says nothing about a public policy of ensuring fair or just compensation for injured parties. Rather, it speaks of a public policy of assuring a statutory minimum amount for persons injured in such accidents. Finally, Appellants' reliance on *Winterton* is misplaced

since Appellants *have* received "financial remuneration" for Criger's negligence in the amount of $100,000 for each claim. Thus, we reject Appellants' public policy arguments.

Second, Appellants' argument that authority for Greene County to implement an unlimited indemnification policy can be "fairly implied" from § 49.275 ignores several rules of law. The foremost of these is the maxim that provisions waiving sovereign immunity are to be strictly construed. *Richardson*, 863 S.W.2d at 880, 882[23]. Moreover, powers granted to a county must be exercised in a manner not contrary to the public policy of the state. *Carson v. Oxenhandler*, 334 S.W.2d 394, 397[2] (Mo.App.1960). The goal of Missouri's sovereign immunity act is to limit the government's financial exposure while granting victims some compensation. *Richardson*, 863 S.W.2d at 880. To accept Appellants' argument that § 49.275 "impliedly" authorized Greene County to *fully* indemnify Criger would run counter to the policy of limited sovereign immunity. Adhering to the principle that all fair and reasonable doubts about the existence of a county's power must be resolved against the county, *Lancaster*, 180 S.W.2d at 708[3], we conclude that Greene County had no authority to adopt a policy of unlimited indemnification for its employees. There are no express words granting the County such authority. Neither can such authority be fairly implied from or considered incident to those powers expressly conferred on counties in § 49.275. We reject Appellants' arguments to the contrary.

Our conclusion that Greene County lacked authority to expand its liability in this area makes it unnecessary for us to interpret the language of Greene County's accident policy because the county had no authority to adopt a policy expanding its liability beyond the statutory limitations. When a county acts outside its delegated authority, its actions are void. *Lancaster*, 180 S.W.2d at 708[1]; *Browning–Ferris Ind. of Kansas City, Inc. v. Dance*, 671

S.W.2d 801, 808[7] (Mo.App.1984). The trial court did not err in sustaining the County's motion for summary judgment. Point I is denied.

Appellants' second point maintains that "the trial court erred in concluding that [Greene County] had no indemnity obligations to ... Criger because the trial court's findings of fact do not support this conclusion and, at a minimum, there is a genuine issue of material fact as to whether [the County's] accident policy limited its indemnity obligations on behalf of its employees."

Our resolution of Appellants' first point is dispositive here. The determination of whether Greene County had authority to adopt an accident policy expanding its liability beyond the limits set by § 537.610.2 is a matter of law. In Point I, we concluded Greene County lacked such authority. Consequently, facts that might otherwise be relevant and necessary to interpreting the County's accident policy are immaterial. "The moving party is entitled to summary judgment as a matter of law when that party can establish that there exists no genuine issue as to any material fact." *Eads v. Kinstler Agency, Inc.*, 929 S.W.2d 289, 291 (Mo.App.1996). This rule has application here. Point II is denied.

 Appellants' third point challenges Greene County's refusal to indemnify and defend Criger in accordance with its accident policy as a violation of his due process rights, as guaranteed by the United States and Missouri Constitutions. Appellants argue that Greene County's accident policy created a protected property interest in Criger which the county could not take away without first affording Criger due process. The record shows, however, that Appellants did not raise this issue at any point in this case before claiming it as error in Point III of their appellate brief. "Constitutional issues are waived unless raised at the earliest possible opportunity consistent with orderly procedure." *Hollis v. Blevins*, 926 S.W.2d 683[1] (Mo.banc 1996). The appropriate

time to raise this constitutional issue would have been in a responsive pleading to the declaratory judgment petition, particularly since Greene County named Criger as a defendant in the petition. *See Bauldin v. Barton County Mut. Ins. Co.*, 666 S.W.2d 948, 951 (Mo.App.1984). For the reasons outlined in *Hollis* and *Bauldin*, we hold that Appellants waived any claims that Criger was denied his constitutional right to due process.

Appellants' fourth and final point reads:

"THE TRIAL COURT ERRED IN HOLDING THAT THE SOVEREIGN IMMUNITY STATUTES (RSMo § 537.600 AND § 537.610) NULLIFIED [GREENE COUNTY'S] STATED INDEMNITY OBLIGATION IN ITS ACCIDENT POLICY BECAUSE IN SO DOING, THE TRIAL COURT EFFECTIVELY DEPRIVED APPELLANTS OF THEIR OPPORTUNITY TO OBTAIN JUST COMPENSATION FOR THEIR INJURIES FROM [CRIGER], AND THEREBY, VIOLATED THE POLICY OF THIS STATE AND ARTICLE I, SECTION 2 OF THE MISSOURI CONSTITUTION."

Appellants' reliance on Missouri's alleged policy of "just compensation" is merely a rehash of the policy argument made and rejected in Point I. For the same reasons expressed in Point I, we deny the "public policy" prong of Appellants' fourth point.

As to Appellants' argument that summary judgment for Greene County violates rights guaranteed them by Article I, Section 2 of the Missouri Constitution, we find *Fisher v. State Highway Comm'n of Mo.*, 948 S.W.2d 607 (Mo.banc 1997), dispositive. In *Fisher*, our supreme court concluded, after extended analysis, that "[s]ection 537.610 does not violate article I, section 2 of the Missouri Constitution." *Id.* at 610[1]. Appellants now ask this court to "revisit the constitutionality issue." This we cannot do. Our courts are constitutionally bound to follow the controlling deci-

sions of the Supreme Court of Missouri. Mo. CONST. art. V, § 2 (1945); *Fletcher v. Stillman,* 934 S.W.2d 597, 599[2] (Mo.App. 1996).

Appellants also attempt to escape the adverse holding in *Fisher* by arguing that it is factually distinguishable from this case in that here "the sovereign immunity statutes are being used to nullify [Greene County's] Accident Policy whereby [Greene County] has obligated itself to defend and indemnify its non-sovereign employees." Despite Appellants' attempt to characterize their argument as something other than a direct constitutional attack on § 537.610, the ultimate thrust of their argument is that § 537.610 as applied here is unconstitutional under Article 5, Section 2 of the Missouri Constitution. Our supreme court rejected such an attack on § 537.610 in *Fisher,* and, as already stated, we are bound thereby. Consequently, Appellants' fourth point is denied.

The judgment of the trial court is affirmed.

GARRISON, C.J., MONTGOMERY, J., concur.